# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**BRANDON SCOTT**                                                                                 **PLAINTIFF**

**v.**                                                       **CIVIL ACTION NO.: 3:13-CV-119-SA-SAA**

**SOUTHERN ELECTRIC SUPPLY**
**COMPANY, INC., d/b/a/ REXEL**                                         **DEFENDANT**

## MEMORANDUM OPINION

This cause is before the Court on Plaintiff's Motion for a Preliminary Injunction [6] and Motion for Partial Summary Judgment [14]. The Court previously denied Plaintiff's Motion for a Temporary Restraining Order [6] because Plaintiff failed to show that irreparable injury would occur before a preliminary injunction hearing could be held. The Court thereafter conducted a preliminary injunction hearing on June 12, 2013 and continuing on June 17, 2013. Having reviewed the applicable authority, the briefing of the parties, and the arguments presented, the Court finds as follows:

*Factual and Procedural Background*

Plaintiff Brandon Scott began employment with Defendant Rexel in April 2006. In 2011, Scott was promoted to the position of outside salesman at the Oxford, Mississippi Rexel branch. Before attaining that promotion, however, Scott was required to sign a non-competition covenant which precluded employment with any competitor within a 100 mile radius of Oxford, Mississippi for a period of one year immediately following the conclusion of his employment with Rexel. Scott executed that covenant and took over as the branch's only full-time outside salesman. As the sole full-time outside salesman, Scott was the branch's primary representative charged with selling commercial, industrial, and residential electrical products to surrounding businesses and contractors. In this role, Scott's accounts constituted approximately 70% of the branch's overall sales.

On or about April 5, 2013, Scott's immediate supervisor, Paul Brewer, apparently learned that Scott had allowed a cash sales ticket to remain open for an inordinately extended period of time. Brewer thereafter reported the occurrence to the Rexel division office in Meridian, Mississippi, which conducted a preliminary investigation into the potential policy violation. According to Human Resources Manager Amy Boutwell, Scott subsequently admitted that he had accepted a post-dated check from the particular cash-sales customer, that he had accepted merchandise for return without issuing a credit ticket, and that he had manually manipulated the pricing and quantities of the delivered products after the completion of the transaction.

Scott was then placed on paid leave pending further review of the sale. On April 22, 2013, Scott was notified that he had been terminated and was informed that his termination was based on several violations of company policies and procedures. Specifically, Scott was informed that he had violated company policy by accepting merchandise without completing a credit ticket, failing to timely enter sales information by manipulating prices and quantities after completion of a sale, and accepting merchandise for return that Rexel did not sell.

Following his termination, Scott met informally with one of Rexel's competitors in Oxford, Mississippi to explore any potential employment opportunities. Upon learning that Scott had begun the process of potentially seeking employment with a competitor, Rexel sent a cease and desist letter to both Scott and the potential employer. The letter reiterated that Scott had signed a non-competition covenant and expressed Rexel's intent to enforce that agreement. The competing employer thereafter withdrew from any potential employment negotiations with Scott.

Plaintiff subsequently filed the present action, seeking a temporary restraining order and a preliminary injunction to enjoin Defendant from maintaining its right to enforce the non-competition agreement. Plaintiff contends that the non-competition covenant fails because it is ambiguous, and,

moreover, because its terms are unreasonable. This Court denied Plaintiff's request for a temporary restraining order because Scott failed to produce sufficient evidence or argument demonstrating that irreparable harm would occur if injunctive relief was not immediately granted.

*Preliminary Injunction Standard*

Preliminary injunctions are extraordinary forms of relief and require the plaintiff to carry an onerous burden. See Clark v. Prichard, 812 F.2d 991, 993 (5th Cir. 1987); Trinity USA Operating, LLC, v. Barker, 844 F. Supp. 2d 781, 785 (S.D. Miss. 2011) (Commenting that "the enormity of the relief is difficult to overstate."). The ultimate function of employing such injunctive relief is merely to preserve the status quo until the case can be heard on its merits. Morgan v. Fletcher, 518 F.2d 236, 239 (5th Cir. 1975). A determination as to whether a set of circumstances warrants such relief rests in the discretion of the district court subject only to four preconditions enumerated by the Fifth Circuit. See Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).

Thus, in order to prevail on a motion for preliminary injunction under Canal Central, a plaintiff must show (1) a substantial likelihood of success on the merits, (2) a substantial threat that he will suffer irreparable injury if the preliminary injunction is denied, (3) his threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) granting the preliminary injunction will not disserve the public interest. Speaks v. Kruse, 445 F.3d 396, 399-400 (5th Cir. 2006); Howell v. City of New Orleans, 844 F. Supp. 292, 293 (E.D. La. 1994); see also Northeastern Florida Chapter of the Assoc. of General Contractors of Amer. v. City of Jacksonville, Florida, 896 F.2d 1283, 1285 (11th Cir. 1990) (enunciating that movant "must clearly carry the burden of persuasion as to the four prerequisites"). Moreover, even when a movant establishes each of the Canal Central requirements, the decision whether to grant or deny preliminary injunctive relief is left to the discretion of the district court and granting such relief remains the exception rather than

3

the rule.  Digital Gen. Inc., v. Boring, 869 F. Supp.2d 761, 772 (N.D. Tex. 2012)  (citing Mississippi Power & Light Co. v. United Gas Pipe Line, 760 F.2d 618, 621 (5th Cir. 1985)).

*Application of the Canal Central Factors*

As previously articulated, Scott's request for a temporary restraining order was denied on grounds that he had failed to demonstrate irreparable harm.  Scott's showing at the preliminary injunction hearing was equally unpersuasive and the Court finds that Plaintiff has still failed to satisfy the second Canal Authority consideration, a demonstration of irreparable injury.  As articulated by the United States Supreme Court, mere loss of income and injury to reputation are insufficient grounds to support a finding of irreparable injury.  Sampson v. Murray, 415 U.S. 61, 88, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974).

Although the concept of irreparable injury is incapable of a precise definition, the question of whether a remedy will eventually be available to cure the alleged wrongdoing remains at the heart of the inquiry.  See Morgan, 518 F.2d at 240.  After all, "[t]he possibility that adequate compensatory or other corrective relieve will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Id.  (quoting Virginia Petro. Jobbers Assoc. v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).  Lost salary and financial distress are typically considered the type of injury that are compensable after a trial on the merits.  Digital Gen., 869 F. Supp. 2d at 781 (citing Sampson, 415 U.S. at 90, 94 S. Ct. 937).

On the other hand, courts recognize a limited exception "even where economic rights are involved, when the nature of those rights makes establishment of the dollar value of the loss…especially difficult or speculative." Allied Mktg. Group, Inc. v. CDL Mktg, Inc., 878 F.2d 806, 810 (5th Cir. 1989).  Accordingly, "[a] loss of a business' customers and damage to its goodwill are widely recognized as injuries incapable of ascertainment in monetary terms and must thus be

4

irreparable." Block Corp. v. Nunez, 2008 WL 1884012 *6 (N.D. Miss. Apr. 25, 2008); see also Taylor v. Cordis Corp., 634 F. Supp. 1242, 1249 (S.D. Miss 1986) (articulating "that a manufacturer suffers the threat of irreparable injury whenever a salesman opts to transfer his portion of the goodwill to another company."). That limited exception, however, typically requires a showing that the potential loss is so great that it "threatens the existence of the movant's business," or perhaps even threatens bankruptcy. Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975); Florida Businessmen v. City of Hollywood, 648 F.2d 956, 958 n. 2 (5th Cir. 1981).

In the present case, Plaintiff alleges that if Defendant is allowed to maintain its current position, he will "completely lose his ability to provide a living for his wife and three children by attaining employment within his expertise." Such economic harm alone, however, in no way demonstrates that the harm will be irreparable. Sampson, 415 U.S. at 88, 94 S. Ct. 937 ("The Court of Appeals intimated that either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief. We disagree."); see also Howard v. Town of Jonesville, 935 F. Supp. 855, 859 (W.D. La. 1996) (noting that "plaintiff's largely conclusory allegations that her continuing separation from her employment has caused irreparable harm to her reputation and career are simply not of a magnitude to justify a preliminary injunction."); Union Nat'l Life Ins. Co. v. Tillman, 143 F. Supp.2d 638, 645 (N.D. Miss. 2000) ("rejecting employee's argument that non-compete prevented him from earning a living and noting that he so agreed to limit himself in order to obtain his previous employment.").

Here, Plaintiff completely failed to present any testimony or evidence regarding the irreparability of the harm he claims. Plaintiff's only testimony regarding potential harm indicated that he had since fallen behind on his mortgage and truck payment. Absolutely no other details of that harm were adduced at the hearing, and the evidence additionally revealed that such budgetary

strains may have preceded his termination at Rexel.

Although Plaintiff's counsel intimated that the situation placed extraordinary strain on Plaintiff's marital relationship, no evidence was presented regarding that potential discord. Moreover, although Plaintiff's counsel insinuated that Scott's future was clouded by the potential for bankruptcy and governmental assistance, no evidence of such dire financial straits was presented. Plaintiff produced no evidence indicating that severe damage to his reputation has been inflicted, or that he will be unable to obtain employment in another capacity. Instead, Plaintiff focused his argument on grounds that he would not be able to obtain a similar job making a similar salary. The bulk of Plaintiff's claim, of potential lost wages, will be fairly easily calculated and therefore leans heavily against the availability of preliminary injunctive relief.

Additionally, maintaining the status quo in the present case would likely require the court to uphold the validity of the covenant rather than set it aside. See MedX Inc., of Florida v. Ranger, 780 F. Supp. 398, 405 (E.D. La. 1991) (enforcing a restrictive covenant in order to "preserve the relative positions of the parties until a trial" could decide the merits.); see also Morgan Stanley DW, Inc., v. Frisby, 163 F. Supp. 2d 1371, 1375 (N.D. Ga. 2001) (finding that money damages were an adequate remedy for the violation of a non-compete agreement). As articulated by the Fifth Circuit, "[i]t is the threat of harm that cannot be undone which authorizes exercise of [the] equitable power to enjoin before the merits are fully determined." Parks v. Dunlop, 517 F.2d 785, 787 (5th Cir. 1975). Thus, that threat must be sufficiently addressed before the court grants preliminary relief.

A preliminary injunction is an extraordinary form of relief and requires the movant to carry his burden of proof as to each of the four prerequisites. In the case at hand, the Court previously denied Plaintiff's motion for temporary restraining order based on his failure to adequately demonstrate that irreparable harm would occur absent preliminary relief. Plaintiff's showing at the

6

preliminary injunction hearing was no different than that previously presented, and the Court finds that Plaintiff's motion for a preliminary injunction is likewise due to be denied.

*Summary Judgment Standard*

In addition, Plaintiff has also filed a motion for partial summary judgment. That motion is limited in nature and seeks only to have the court determine "[w]hether the [c]ovenant, by its express terms, is ambiguous as to the meaning of the term 'cause.'" Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals both that there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate

substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

*Ambiguity of the Covenant*

Under Mississippi law, non-competition agreements are "restrictive contracts [which] are in restraint of trade and individual freedom and are not favorites of the law." Empiregas, Inc. of Kosciusko v. Bain, 599 So. 2d 971, 975 (Miss. 1992). But, as significantly noted, "they are valid unless unreasonable, and when reasonable, the courts will not hesitate to hold the parties to their contracts." Frierson v. Sheppard Bldg. Supply Co., 154 So. 2d 151, 172 (Miss. 1963).

Questions of contract construction and ambiguity are questions of law, rather than questions of fact. Epperson v. SouthBank, 93 So. 3d 10, 17 (Miss. 2012). In determining whether contractual language is ambiguous, the mere fact that the parties disagree about its meaning does not make the contract ambiguous as a matter of law. Delta Pride Catfish, Inc., v. Home Ins. Co., 697 So. 2d 400, 404 (Miss. 1997). Instead, "[c]ontractual provisions are ambiguous where they are susceptible of two or more reasonable interpretations, or where one provision is in direct conflict with another provision, or where terms are unclear or of doubtful meaning." Reece v. State Farm Fire & Cas. Co., 684 F. Supp. 140, 143 (N.D. Miss. 1987) (citing Dennis v. Searle, 457 So. 2d 941, 945 (Miss. 1984)).

As articulated by the Mississippi Supreme Court, "[a]n 'ambiguous' word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." Epperson, 93 So. 3d at 19 (citing Dalton v. Cellular South, Inc., 20 So. 3d 1227, 1232 (Miss. 2009)).

8

Courts will, of course, routinely give undefined words their "commonly accepted meaning." Parkerson v. Smith, 817 So. 2d 529, 541 (Miss. 2002). The Mississippi Supreme Court, when analyzing Iowa law, has before articulated that the "existence of more than one dictionary definition is not the *sine qua non* of ambiguity; otherwise, few words would be unambiguous." Zurich Am. Ins. Co. v. Goodwin, 920 So. 2d 427, 438 (Miss. 2006).

In the case at bar, the covenant provides in pertinent part:

> 1(c) Non-Competition and Non-Solicitation Obligations
>
> The Employee acknowledges and agrees that the Rexel Companies conduct the Business on a national basis and that pursuant to the Offer letter the Employee will be assigned to work for the Company in the Subject Business at the Company's offices in the greater Oxford, Mississippi area and as part of his duties will perform services for the Company in the city of Oxford, Mississippi and a one hundred mile radius thereof (collectively, the "Restricted Area") and that the Company and the other Rexel Companies would be harmed if he engaged in competitive activities in the electrical wholesale and distribution business for another entity anywhere in the Restricted Area given the Employee's experience, knowledge, and business contacts with customers, suppliers and communities [sic] leaders throughout the Restricted Area that he has or will develop in the performance of his Company duties across the Restricted Area. Accordingly, the Employee will not, directly or indirectly:
>
>> 1(c)(i) during the period commencing as of the date of his Company employment and ending one year following termination of his Company employment (the "Non-Competition Restricted Period"), provide services similar to those provided for or to the Company or any of the other Rexel Companies, or services similar to those provided by the Company or any of the other Rexel Companies of which the Employee had direct knowledge or In [sic] which the Employee had direct Involvement, on behalf of any other entity involved in the Subject Business ("Competitor"), as an employee, consultant, director anywhere in or for transactions occurring or arising in the Restricted Area; nor shall the Employee acquire by reason of purchase during the Non-Competition Restricted Period the ownership of more than one percent (1%) of the outstanding equity interest in any

Competitor in the Restricted Area.

However, the agreement further clarifies:

> Notwithstanding the provisions of Section 1(c), if in the case of a termination of the Employee's employment by the Company without cause, the Restrictive Covenants of Section 1(c) of this Agreement shall only continue for the number of weeks for which the Employee is entitled to receive payment of severance ("Severance Period") unless the Company in its discretion makes monthly payments to the Employee equal to his monthly base salary after the Severance Period through all or a portion of for the remainder of the Non-Competition Restricted Period. If the Company does not continue to pay such monthly amount, then the Restrictive Covenants in Section 1(c) of this Agreement shall lapse as of the last day that the Employee is provided with severance and such Restrictive Covenants shall then no longer be valid.

In his effort to paint the covenant as ambiguous, Plaintiff relies heavily on Kennedy v. Metropolitan Life Insurance Company. 759 So. 2d 362, 367 (Miss. 2000). In Kennedy, the defendant was a successful insurance salesman who had switched firms and issued new policies to a number of clients he had obtained while under the employ of his previous company. Id. at 364. The previous employer thereafter filed suit on the basis that his conduct violated a non-competition agreement entered into by the parties. Id.

The agreement entered into by the defendant stipulated, that upon dissolution of the parties' relationship, the defendant "[would] not directly or indirectly perform any act or make any statement which would tend to divert from [plaintiff] any trade or business…nor [would defendant] advise or induce any customer of [plaintiff]…to reduce, replace, lapse, surrender or cancel any insurance obtained from or through [plaintiff]." Id. at 365. The proof presented indicated that although defendant had indeed accepted the former customers and issued them new policies, he had not actively pursued them, and they had sought him out on their own volition. Id. at 367.

The court found the agreement ambiguous because it failed to expressly prohibit defendant

from accepting business with former clients, and left open whether he could sell new policies to those customers so long as he did not actively induce them or whether he could merely not advise them to switch coverage. Id. In finding that the clause should therefore be held inapplicable, the Mississippi Supreme Court noted that "the burden properly falls on the employer to draft a non-competition agreement which clearly delineates the scope of the employee's permissible business activities following the termination of employment." Id. at 367, 368. Because the defendant's actions would have been lawful under one reasonable interpretation of the agreement, but not the other, the court held that the employer was forced to bear the burden of the ambiguity. Id.

In the case at hand, the agreement provides that, absent severance payments, the covenant does not apply if the employee is terminated "without cause." At the time of Scott's discharge, he was informed that he was being terminated for specific violations of company policy. Among the terminable offenses provided were: manipulating totals owed on tickets by deducting credits without following procedure, accepting returned inventory for a product Rexel did not sell, and delivering product without immediate payment. Additionally, an email Scott sent to Rexel's director of Human Resources, Amy Boutwell, is consistent with Scott being informed of such. That email stated, "I understand that I broke 'company protocol' but it was nothing I did behind any of my coworkers back or my manager, and I never did anything that I didn't have permission to do from my immediate boss."

The contract here is not rendered ambiguous simply because "without cause" is undefined by the agreement entered into by the parties. The covenant here clearly provided, "during the period commencing as of the date of his Company employment and ending one year following termination of his Company employment . . . [the employee shall not] provide services similar to those provided for or to the Company . . . on behalf of any other [competitor] as an employee, consultant, director

anywhere in or for transactions occurring or arising in the Restricted Area." Additionally, the agreement carved out a limited exception "in the case of a termination of the Employee's employment by the Company without cause" and established that, in that event, the non-competition agreement would only continue "for the number of weeks for which the Employee is entitled to receive [severance payments] unless the Company in its discretion makes monthly payments to the Employee equal to his monthly base salary."

Reading the contract as whole, the Court determines that the only instance in which the non-competition covenant does not apply is when the employee is terminated "without cause." Without cause simply cannot be interpreted to include instances in which an employee is terminated for specific violations of company policies and procedures.

Additionally, such cause terminology was consistently used in the parties' correspondence and interactions. For instance, in the offer of employment letter mailed to Scott January 18, 2011, Boutwell stated, "Your employment with the Company is at will and the Company may terminate your employment with or without (including no) cause." Scott was directed to contact the company regarding any questions he might have had relating to the terms of the offer, but did not do so.

It is undisputed that Scott was terminated following an investigation, which revealed that he was in violation of a number of corporate policies regarding cash sales. Although Scott contends that other Rexel employees also violated the subject corporate standards, he has not contended that he did not violate the cited procedures. Unlike the situation presented in Kennedy, the present scenario did not present a situation in which one interpretation of "without cause" would have removed Scott from the coverage of the non-competition agreement while another would not have. See Kennedy, 759 So. 2d at 367. Scott was informed by Defendant the reasons for his termination, and his email to the director of human resources reflected his understanding that he had been

discharged for violation of corporate policy. The Court finds that the "without cause" language employed in the agreement was not susceptible to more than one interpretation, and therefore, is not ambiguous.

*Conclusion*

A preliminary injunction is an extraordinary remedy, and should only be granted if the movant has clearly carried the burden of persuasion on all four prerequisites. Canal Authority, 489 F.2d at 572. Plaintiff has again failed to show that irreparable injury will occur if the injunction is not granted, and the Court therefore denies his Motion for a Preliminary Injunction [6]. Moreover, the Court determines that the non-competition agreement entered into by the parties is not ambiguous, and the Court therefore also denies Plaintiff's Motion for Partial Summary Judgment [14].

SO ORDERED, this the 27th day of June, 2013.

**/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**